Frank J. GUINAN, Appellant,

v.

Paul K. DELO, Superintendent, Potosi
Correctional Center, Appellee.

No. 93–1953.

United States Court of Appeals,
Eighth Circuit.

Submitted June 9, 1993.

Decided Sept. 16, 1993.

William E. Reeves, Carutherville, MO, argued, for appellant.

Stephen D. Hawke, Asst. Atty. Gen., Jefferson City, MO, argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, FAGG and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

Frank J. Guinan appeals from the District Court's [1] denial of his Rule 60(b) motion, *see* Fed.R.Civ.P. 60(b), seeking relief from the District Court's decision denying Guinan's 28 U.S.C. § 2254 petition for a writ of habeas corpus. Prior to the filing of Guinan's Rule 60(b) motion, we affirmed the District Court's denial of his habeas petition in *Guinan v. Armontrout*, 909 F.2d 1224 (8th Cir. 1990), *cert. denied*, 498 U.S. 1074, 111 S.Ct. 800, 112 L.Ed.2d 861 (1991). We now affirm the denial of Guinan's Rule 60(b) motion.

## I.

The Supreme Court of Missouri summarized the evidence underlying Guinan's murder conviction in its affirmance of Guinan's conviction on direct appeal. *State v. Guinan*, 665 S.W.2d 325, 327–28 (Mo.) (en banc), *cert. denied*, 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984). We repeat only those portions of the evidence that are relevant to this opinion. In 1981, Guinan was incarcerated at the Missouri State Penitentiary where he shared a cell on the ground floor of Housing Unit 4 with Richard Zeitvogel. The murder victim, John McBroom, shared a cell with William Houchin on the second floor of the same housing unit. McBroom's murder occurred on January 25, 1981, a Sunday morning and thus a time when only one officer was posted on duty in the housing unit.

Beginning at approximately 10:30 a.m. on the day of the murder, the officer on duty in the housing unit observed Guinan and Zeitvogel make several trips to the upper levels of the unit. The officer also noticed that Houchin, who normally remained in his cell

until noon, was outside the cell and that three other inmates had taken positions from which they could observe the officer. Beginning at 10:55 a.m., two of these three inmates began to request that the officer ring the buzzer for "mainline." When "mainline" is rung, most inmates go to the cafeteria for lunch, creating a considerable amount of noise and movement in the housing unit as they depart. The request for "mainline" was unusual, since prisoners who wish to may go to the cafeteria before "mainline." The officer called his shift captain and said that he had a feeling that something was wrong and that he was going to need help.

Shortly after 11:00 a.m., and before help arrived, the officer observed Guinan and Zeitvogel emerge from McBroom's cell. Both men were covered with blood and each was carrying a knife fashioned from one half of a pair of scissors. As Guinan attempted to close the door to the cell, he saw the officer watching him. Both Guinan and Zeitvogel began running away from the area of McBroom's cell. At this point, the reinforcements the officer had requested arrived and, following a brief altercation, subdued and disarmed Guinan and Zeitvogel. During the capture McBroom staggered out of his cell covered in blood. McBroom was taken to the prison hospital where he was pronounced dead at 11:27 a.m. McBroom had suffered at least sixteen separate stab wounds, including three around the left eye that penetrated his brain and six in his back.

Prior to trial, Guinan's counsel moved for a mental examination. *See* Mo.Rev.Stat. § 552.020 (Supp.1980). Section 552.020.2 provides that "[w]henever any judge has reasonable cause to believe that the accused has a mental disease or defect excluding fitness to proceed he shall ... appoint one or more private psychiatrists ... to examine the accused or shall order the director of the department of mental health ... to have the accused examined." Guinan's counsel argued that Guinan's history of violent crime, the seriousness of the offense with which he was

---

**1.** The Honorable Scott O. Wright, Senior United States District Judge for the Western District of    Missouri.

charged, and counsel's doubt about Guinan's competency based on counsel's difficulty in eliciting specific responses from Guinan all supported conducting a mental examination of Guinan. The state trial court denied the motion for a mental examination.

At trial Guinan relied on a theory of self-defense. The jury rejected Guinan's theory and convicted him of capital murder. *See id.* § 565.001 (1978). At the punishment phase of the trial, the state introduced evidence of Guinan's twelve prior felony convictions, including two for assault with intent to kill with malice, and of a previous stabbing incident at the prison in which Guinan was involved. Guinan did not present any evidence at the punishment phase of the trial. The jury found three statutory aggravating factors: namely, that Guinan had "a substantial history of serious assaultive criminal convictions," *id.* § 565.012.2(1) (Supp.1980); that the murder "was outrageously or wantonly vile, horrible or inhuman in that it involved torture, or depravity of mind," *id.* § 565.012.2(7) (Supp.1980); and that at the time of the murder Guinan was "in a place of lawful confinement," *id.* § 565.012.2(9) (Supp.1980). The jury sentenced Guinan to death.

The Supreme Court of Missouri affirmed Guinan's conviction and sentence on appeal. *Guinan,* 665 S.W.2d 325. Guinan sought post-conviction relief under Rule 27.26 of the Missouri Supreme Court Rules arguing, *inter alia,* that his trial counsel was ineffective in failing to investigate adequately a possible defense based on mental disease and in failing to present mitigating evidence at the punishment phase of the trial. The state trial court denied Guinan's Rule 27.26 motion, and the Missouri Court of Appeals affirmed that denial. *Guinan v. State,* 726 S.W.2d 754 (Mo.Ct.App.1986), *cert. denied,* 484 U.S. 873, 108 S.Ct. 210, 98 L.Ed.2d 161 (1987).

Guinan then sought federal habeas relief under 28 U.S.C. § 2254 raising, among other arguments, these same two claims of ineffective assistance of trial counsel. The District Court ordered a psychiatric evaluation of Guinan and heard evidence from the psychiatrist and the psychologist who conducted the evaluation. Guinan was diagnosed as having

antisocial personality disorder; the psychiatrist explained this as "a diagnosis that does not infer a severe mental disease. It's really personality characteristics that meet certain criteria...." *Guinan,* 909 F.2d at 1229 (quoting Transcript of Evidentiary Hearing at 18). The evaluation also characterized Guinan as being overcontrolled; the psychologist explained that this meant that Guinan "may bottle up his frustrations rather than finding some way of dispelling them and then after they have kind of accumulated for a period of time, they burst forth in an overly aggressive an [sic] inappropriate way." *Id.* at 1230 (quoting Transcript of Evidentiary Hearing at 41). The examiners concluded, however, that there was no reason to believe that Guinan suffered from any mental illness either at the time of the examination or in January 1981 when the murder was committed. James R. Leach, D.O., & David L. Reuterfors, Ph.D., Forensic Evaluation of Frank Guinan at 5–6 (Aug. 8, 1988).

The District Court denied Guinan's petition for habeas relief, finding that "there was no prejudice by omission of this evidence even if the Court assumes that counsel was ineffective for failing to further investigate this area." *Guinan v. Armontrout,* No. 87–4467–CV–C–5, slip op. at 10 (W.D.Mo. May 18, 1989). The District Court reasoned that Guinan's mental problems did not constitute a mental disease or defect significant enough to excuse responsibility for the crime or to undermine confidence in the outcome of the sentencing determination.

We affirmed the judgment of the District Court. *Guinan,* 909 F.2d 1224. Guinan then filed a motion in the District Court pursuant to Rule 60(b) of the Federal Rules of Civil Procedure seeking relief from the District Court's judgment. The basis for the Rule 60(b) motion was a new mental evaluation of Guinan conducted by William O'Connor, a psychologist, who concluded that Guinan suffers from organic mental disorder.

The District Court held an evidentiary hearing on the Rule 60(b) motion, at which O'Connor testified. O'Connor agreed with Leach and Reuterfors that Guinan did not suffer from any psychosis, that Guinan was not insane at the time of the murder, and

that Guinan was competent to stand trial. According to O'Connor's evaluation, however, Guinan has mild to moderate organic brain damage dating back to before the time of the murder. This brain damage impairs Guinan's "ability to think in a logical organized fashion or plan and anticipate in a logical fashion rapidly." Transcript of Rule 60(b) Hearing at 44. According to O'Connor, "[i]n a prison fight or similar stressful situation, Mr. Guinan's reaction would have been to act without thinking." Affidavit of William A. O'Connor at 2 (Jan. 26, 1993) (filed with Guinan's motion to alter or amend). O'Connor also stated that he believed that at the time of the murder Guinan "was incapable of considering the taking of another's life with a cool and deliberate state of mind." *Id.*

The District Court treated Guinan's Rule 60(b) motion as a second habeas petition. It found that Guinan's claims were barred under the rules applicable to successive petitions and denied the motion. Guinan then filed a motion under Rule 59(e) asking the District Court to alter or amend its judgment. The District Court denied the motion. Guinan appeals from the denial of his Rule 60(b) motion.

## II.

Guinan argues that the trial court erred in treating his Rule 60(b) motion as a second habeas petition. We disagree. Rule 60(b) allows a court to relieve a party from a final judgment in certain circumstances, including the case in which the party discovers evidence after trial that could not have been discovered earlier by the exercise of due diligence. Fed.R.Civ.P. 60(b)(2). At least twice previously, however, we have held that a Rule 60(b) motion seeking relief from the denial of a habeas petition was properly treated as a second habeas petition. *Bolder v. Armontrout,* 983 F.2d 98, 99 (8th Cir. 1992), *cert. denied,* — U.S. —, 113 S.Ct. 1070, 122 L.Ed.2d 497 (1993); *Blair v. Armontrout,* 976 F.2d 1130, 1134 (8th Cir. 1992), *cert. denied,* — U.S. —, 113 S.Ct. 2357, 124 L.Ed.2d 265 (1993).

Guinan correctly points out that neither *Bolder* nor *Blair* mandates that all Rule 60(b) motions in habeas cases be treated as subsequent habeas petitions. We do not rule out the possibility that a habeas case may present circumstances in which a Rule 60(b) motion might properly be examined as such rather than as a subsequent habeas petition. This, however, is not such a case. Guinan's motion was based on new evidence: O'Connor's evaluation of Guinan's mental status. The motion was brought on January 2, 1991, some nineteen months after the District Court's judgment denying Guinan's habeas petition. Thus the motion was untimely under Rule 60(b). *See* Fed.R.Civ.P. 60(b) (providing that motions brought on the basis of newly discovered evidence shall be brought "not more than one year after the judgment").

The case on which Guinan relies is inapposite. *Landano v. Rafferty,* 126 F.R.D. 627 (D.N.J.1989), *rev'd on other grounds,* 897 F.2d 661 (3d Cir.), *cert. denied,* 498 U.S. 811, 111 S.Ct. 46, 112 L.Ed.2d 23 (1990). In that case, Landano brought a Rule 60(b) motion more than a year after the district court's initial judgment denying habeas was entered. The motion was based on newly discovered exculpatory evidence, which the government previously had failed to provide to Landano in violation of Landano's constitutional rights. The court held that Landano's motion was not based only on newly discovered evidence, and granted Landano relief under the catchall provision of Rule 60(b)(6), which allows relief for "any other reason justifying relief" and is not subject to the one-year time limit applicable to motions based on newly discovered evidence.

In the case before us no constitutional violation akin to that in *Landano* prevented the discovery of the new evidence. To be sure, the District Court selected the experts who examined Guinan in the original habeas proceeding, but that was its prerogative. Guinan was not foreclosed from obtaining O'Connor's evaluation during the original habeas proceeding. Guinan's Rule 60(b) motion based on nothing more than O'Connor's evaluation was subject to the one-year time limit; because the motion was untimely, it was not eligible for consideration under Rule 60(b). For this reason alone, the trial court correctly treated the motion as a second habeas

petition. Moreover, even if the Rule 60(b) motion had been timely, the District Court still would have been correct in treating it as a second habeas petition, because it seeks to raise claims that either could have been raised in Guinan's original habeas petition or were raised therein and adjudicated.

### III.

■ Guinan argues that O'Connor's evaluation shows that Guinan was not guilty of capital murder since he could not have committed the murder "deliberately," and that Guinan's trial counsel was ineffective in failing to present this argument at trial. Guinan did not focus in his original habeas petition on this particular aspect of the broader claim that counsel's failure to adequately investigate Guinan's mental status deprived Guinan of a possible defense, and he did not raise the issue in his Rule 60(b) motion. Guinan made the argument for the first time in his Rule 59(e) motion seeking to alter or amend the District Court's judgment denying his Rule 60(b) motion, but he appeals only from the denial of his Rule 60(b) motion. Thus the issue is not properly before us.

■ Even if the "deliberation" claim were properly before us, the claim, which is based on O'Connor's new evaluation of Guinan, would be barred as an abuse of the writ unless Guinan could demonstrate cause and prejudice for his failure to raise the claim in his original petition or unless failure to address the claim would constitute a miscarriage of justice. *See Sawyer v. Whitley,* —— U.S. ——, ——, 112 S.Ct. 2514, 2518, 120 L.Ed.2d 269 (1992). Guinan does not allege cause for his failure to present the claim in his original petition but relies instead on the "miscarriage of justice" or actual innocence exception. Thus, before a federal court could hear the merits of his newly raised claim, Guinan would have to demonstrate by clear and convincing evidence that, had his trial counsel provided effective assistance, no reasonable juror would have found him guilty of capital murder. *See id.* at ——, 112 S.Ct. at 2517; *McCoy v. Lockhart,* 969 F.2d 649, 651 (8th Cir.1992) (holding that the standard set forth in *Sawyer* for challenges to the imposition of the death penalty also applies to challenges to criminal convictions).

■ The capital murder statute under which Guinan was convicted provides that a person who "deliberately" kills another person is guilty of capital murder. Mo.Rev.Stat. § 565.001. Under Missouri law, deliberation separates capital murder from second degree murder and is an essential element of capital murder. *State v. Gilmore,* 650 S.W.2d 627, 629 (Mo.1983) (en banc). Deliberation "means the defendant considered the taking of another's life while in a cool and deliberate state of mind." *State v. Eggers,* 675 S.W.2d 923, 927 (Mo.Ct.App.1984). Deliberation "may be proved by indirect evidence and inferences reasonably drawn from circumstances surrounding the slaying." *State v. Turner,* 623 S.W.2d 4, 7 (Mo.1981) (en banc), *cert. denied,* 456 U.S. 931, 102 S.Ct. 1982, 72 L.Ed.2d 448 (1982). Proof of mental derangement short of insanity may be considered as evidence of lack of deliberate design. *State v. Anderson,* 515 S.W.2d 534, 540 (Mo. 1974) (en banc).

Although these principles of Missouri law allow the type of defense that Guinan claims his counsel should have made, we do not believe that Guinan has met his burden of showing that no reasonable jury presented with O'Connor's evidence would have found that Guinan murdered McBroom deliberately. The central problem with Guinan's argument is that the record is replete with evidence that McBroom's murder was planned well in advance of the time it took place. The murder took place on a Sunday morning, a time when only one guard supervised the housing unit in which Guinan and McBroom resided. Guinan and Zeitvogel, who normally remained on the ground floor of the unit, made several trips into the upper tiers of the housing unit in the half-hour preceding the murder. At least four other inmates appear to have been aware of the murder in advance and to have assisted Guinan and Zeitvogel in its perpetration: three inmates took up positions from which they could watch the officer on duty and attempted to create a distraction by requesting that the officer ring "mainline"; and Houchin, McBroom's cell mate, who ordinarily remained in his cell until noon, left the cell leaving McBroom there alone. Finally, Guinan and Zeitvogel were both armed with homemade knives when they entered McBroom's cell.

This evidence that the murder was planned in advance is powerful circumstantial evidence that Guinan committed the murder deliberately. Moreover, although the evidence strongly supported a finding that the murder was planned in advance in some detail, O'Connor's evidence went principally to Guinan's ability to deliberate when suddenly confronted with a stressful situation such as a prison fight. According to O'Connor, in such a situation Guinan's reaction would have been to act without thinking. Such evidence might have considerable force in showing that Guinan did not commit the murder deliberately if Guinan's defense that McBroom was the aggressor were plausible. But that defense is incredible in light of the strong evidence that Guinan and Zeitvogel planned McBroom's murder in advance.

We are mindful that O'Connor states in his affidavit that he believes Guinan to be incapable of "considering the taking of another's life with a cool and deliberate state of mind." Affidavit of William A. O'Connor at 2. There is nothing to indicate, however, that this statement reflected anything more than O'Connor's personal beliefs. We have reviewed carefully the entire transcript of O'Connor's testimony given at the Rule 60(b) evidentiary hearing, and we note that O'Connor neither mentioned this belief, nor, in contrast to the other opinions he rendered, gave any testimony regarding any tests he had conducted that supported such an opinion or regarding any other basis for such an opinion. Therefore we accord little weight to this unsupported statement.

In sum, Guinan falls far short of the showing required to satisfy the "miscarriage of justice" exception. Guinan has not shown by clear and convincing evidence that no reasonable juror presented with O'Connor's testimony could have found beyond a reasonable doubt that Guinan murdered McBroom deliberately. Thus, even if this ineffective assistance claim were properly before us, we would be barred by the principles set forth by the Supreme Court in *Sawyer v. Whitley* from reaching its merits.

## IV.

■ Guinan also argues that O'Connor's evaluation supports Guinan's claim of ineffective assistance of counsel at the sentencing phase of Guinan's trial. Again, Guinan does not assert cause for his failure to present evidence of O'Connor's evaluation in his first habeas petition. Thus Guinan's claim is barred as either a successive claim or as an abuse of the writ unless failure to address the claim would result in a miscarriage of justice. Guinan cannot meet this standard in light of the Supreme Court's decision in *Sawyer*. In that case, the Court held that "the 'actual innocence' requirement must focus on those elements which render a defendant eligible for the death penalty, and not on additional mitigating evidence which was prevented from being introduced as a result of a claimed constitutional error." *Sawyer*, —— U.S. at ——, 112 S.Ct. at 2523. In order to establish a miscarriage of justice, a petitioner must show that "there was no aggravating circumstance or that some other condition of eligibility" was not met. *Id.* at ——, 112 S.Ct. at 2522.

Under Missouri law, a defendant who is convicted of capital murder is subject to the death penalty if the jury finds at least one of the statutory aggravating factors set forth in section 565.012. *See* Mo.Rev.Stat. § 565.-012.5 (Supp.1980). In Guinan's case, the jury found three statutory aggravating factors, and O'Connor's evaluation of Guinan's mental status is completely irrelevant to at least two of these factors: that Guinan had a substantial history of serious assaultive criminal convictions, and that at the time of the murder Guinan was in a place of lawful confinement. The record clearly supports the jury's finding of these two aggravating factors. Guinan cannot show by clear and convincing evidence that no reasonable juror would have found these aggravating factors if O'Connor's evaluation had been presented to the jury. O'Connor's evaluation is simply additional mitigating evidence. Therefore, the District Court correctly held that Guinan's sentencing-phase claim based on O'Connor's evaluation is barred under the *Sawyer* principles applicable to serial habeas petitions.

## V.

For the reasons set forth above, we hold that the District Court correctly treated Gui-

nan's Rule 60(b) motion as a second habeas petition and correctly found that Guinan's claims are barred under the rules applicable to successive petitions.

The State of Missouri has filed in this case a motion to quash the certificate of probable cause issued by the District Court and to vacate the stay of execution entered by that court.

This appeal has proceeded and we now have decided it. Accordingly, the motion to quash the certificate of probable cause is denied as moot. The motion to vacate the stay of execution is granted, and the stay is hereby vacated.

The judgment of the District Court is affirmed.