Steven **PARKUS**, Appellant,

v.

Paul K. **DELO**, Appellee.

No. 93–2922.

United States Court of Appeals, Eighth Circuit.

Submitted March 17, 1994.

Decided Aug. 26, 1994.

Sean D. O'Brien, Kansas City, MO, argued (Marianne Marxkors and J. Steven Erickson, on brief), for appellant.

Stephen D. Hawke, Jefferson City, MO, argued (Ronald L. Jurgeson, on brief), for appellee.

Before FAGG, Circuit Judge, BRIGHT, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

BRIGHT, Senior Circuit Judge.

Steven Parkus, a mentally disturbed man raised in state institutions since age four, killed Mark Steffenhagen by strangulation while both were incarcerated in a Missouri prison. A jury convicted Parkus of first degree murder and sentenced him to death. After exhausting all avenues of relief in the Missouri courts, Parkus petitioned for federal habeas corpus relief, raising twenty sepa-

rate claims of error. Parkus alleged, among other things, ineffective assistance of trial counsel due to failure to investigate Parkus' mental health history, and that the prosecutor withheld exculpatory or mitigating evidence. The district court denied Parkus' petition without an evidentiary hearing, holding each issue either procedurally barred, unreviewable, or without merit.

On appeal, Parkus raises eleven points of error, some of which we combine for analytical purposes. Parkus contends the district court erred: (I) in rejecting his claim that Missouri's post-conviction procedures failed to afford him due process with respect to his ineffective assistance of counsel and suppressed evidence claims; (II) in denying him an evidentiary hearing on his ineffective assistance of trial counsel and suppressed evidence claims; (III) in rejecting his claim that a comment by the prosecutor in closing argument abridged his right not to testify; (IV) in rejecting his claim that the prosecutor's closing argument injected prejudice into the trial; (V) in rejecting his claims of ineffective assistance of appellate counsel; (VI) in rejecting his claim that venirepersons who admitted they would "be affected" by the possibility of the death penalty in this case were impermissibly excluded from the jury; (VII) in rejecting his claim that a jury instruction impermissibly required jury unanimity before considering mitigating evidence at the sentencing phase; (VIII) in rejecting his claim that one of the court's instructions impermissibly lowered the state's burden of proof by describing "beyond a reasonable doubt" as requiring proof which leaves the jury "firmly convinced" of guilt; and (IX) in rejecting his claim that imposition of the death sentence violates the eighth amendment because the jury did not actually decide that his three prior convictions were serious and assaultive, and because the aggravating circumstances were duplicative.

Based on claim II, we reverse the district court's denial of an evidentiary hearing and remand this case for a hearing on the ineffective assistance of counsel and suppressed evidence issues.

# I. BACKGROUND

Steven Parkus suffered physical abuse, sexual abuse and neglect throughout his childhood. At age three, his parents abandoned him to the custody of an alcoholic uncle, who brutalized and sexually abused him. Later, Parkus' natural parents and his uncle refused to have any contact with him. Between the ages of four and seventeen, Parkus lived primarily in state mental health facilities and juvenile detention centers. While psychologists tested and observed Parkus frequently during this period, the record before us indicates that Parkus received various diagnoses throughout childhood. Some records describe Parkus as mentally defective, borderline mentally retarded, borderline psychotic, or schizophrenic. Other medical opinions state his condition less severely, or place more emphasis on Parkus' sociopathic nature. Parkus' IQ generally tested at a little over 70, which indicates borderline mental retardation.

Parkus' adult criminal history began at age sixteen, when he assaulted and choked a female teacher at the Missouri Training School. While awaiting trial for the assault, Parkus escaped from jail and assaulted another woman by choking her. Parkus pleaded guilty to three charges stemming from these incidents, and received a seventeen-year prison sentence.

Evidence suggests that at the Missouri State Penitentiary, the physically small Parkus suffered abuse from other inmates, including rape. About two years into his incarceration, Parkus raped and sodomized a fifty-eight-year-old female teacher in a prison classroom, for which Parkus received two consecutive thirty-year sentences.

On November 24, 1985, Parkus entered the cell of Mark Steffenhagen, another inmate who, because of his small stature, had been subjected to abuse and rape. Parkus tied up Steffenhagen's legs and arms with strips of bedding, then, perhaps while engaging in anal intercourse, choked him to death. Prison records which were not disclosed by the prosecutor before trial indicated that prior to the killing Parkus and Steffenhagen had on one occasion been caught and punished for having consensual sexual intercourse.

Steffenhagen's autopsy revealed facial cuts suggesting he had been struck by a blunt object such as a fist. *State v. Parkus*, 753 S.W.2d 881, 883–84 (Mo.) (en banc), *cert. denied*, 488 U.S. 900, 109 S.Ct. 248, 102 L.Ed.2d 237 (1988). In addition, "[b]ruises on the back of his hands, wrist and ankles indicated his arms and legs had been tied and that he had struggled against the bonds. External contusions on the neck as well as internal damage to the larynx demonstrated the cause of Steffenhagen's death was manual strangulation." *Id.* at 884.

Parkus' trial defense asserted that due to a mental disease or defect he lacked the capacity to "deliberate" upon the crime, deliberation being the mental state required for first degree murder under Missouri law.[1] In an effort to substantiate the defendant's diminished capacity defense, Parkus' trial counsel, Donald Catlett, sought Parkus' childhood mental health records by contacting officials at Missouri's Division of Youth Services (DYS), which supervised several of Parkus' placements. A DYS official named Herbert Matchett informed Catlett that Parkus' records had been destroyed. Catlett did not further investigate Parkus' mental health records. Through more vigorous pursuit of the records, habeas counsel learned that they had not been destroyed and that the existing records contained diagnoses of Parkus' mental condition ranging from mild mental retardation to childhood schizophrenia.

Parkus did not testify at trial. His brother Chester, also a state prisoner, did testify to the childhood physical and sexual abuse inflicted upon the petitioner by his parents and uncle. In addition, Chester testified that Parkus had frequently suffered sexual abuse while incarcerated.

Psychiatrist A.E. Daniel examined Parkus on behalf of the defense and testified that although Parkus suffered *from no mental disease or defect*, he did, due to his life experiences, possess diminished mental capacity which prevented him from deliberating upon the murder. Daniel formed this opinion without the unavailable childhood mental health records. These records reflect various diagnoses, including childhood psychosis, schizophrenia and mental retardation.[2] Dr. Daniel has now examined these records which were not previously available to him or to the defendant. In an affidavit accompanying Parkus' federal habeas petition, Dr. Daniel states that had he seen Parkus' childhood mental health records before testifying, he would have concluded that Parkus *did suffer from a mental disease or defect as defined by Missouri law.*

The State's expert, Dr. Jayaratna, interviewed the defendant and ordered a complete neurological exam. Jayaratna testified at trial that Parkus *did not have a mental disease or defect and did possess the capacity to deliberate.* It was later revealed, however, that the neurological exam ordered by Dr. Jayaratna had never been performed.

Dr. Daniel's current affidavit states that his trial testimony relied in part on the erroneous assumption that Jayaratna had received the neurological report, and that the report came back negative for brain damage. Also present in the petitioner's appendix on appeal are two mental health evaluations requested by habeas counsel: (1) a 1990 evaluation by Dr. William O'Connor which states that Parkus has organic brain damage constituting a mental disease or defect under Mo. Rev.Stat. ch. 552; and (2) a 1992 evaluation

1. *See* Mo.Rev.Stat. § 565.020.1 (1986).

2. The psychological reports from Parkus' youth between the ages of eight and thirteen are summarized in Dr. Daniel's affidavit and are provided in full in the appendix on appeal. They include (1) a 1968 psychological examination concluding that the eight-year-old Parkus "is very unstable at this time and may be psychotic." Appellant's App. Vol. III, Tab 24, Exh. 5A; (2) a 1969 psychiatric evaluation, conducted upon admission into a residential youth center, stating that "Steven is a borderline psychotic boy with possible borderline mental retardation." *Id.*,

Exh. 5B; (3) a 1970 psychological evaluation wherein the clinician's diagnostic impression was that Parkus suffered from a "symbiotic psychosis with pseudo-mental retardation". *Id.*, Exh. 5C; (4) a 1971 psychiatric history referring to Parkus' diagnosis as "Schizophrenia, Childhood Type and Mental Retardation, mild, Psycho–Social Environmental Deprivation." *Id.*, Exh. 5D; and (5) a 1973 psychiatric evaluation diagnosing Parkus with "Childhood Psychosis, Schizophrenia, Mental Retardation." *Id.*, Exh. 5E.

performed by Dr. Jonathan Pincus which states that the murder was "unplanned and impulsive", and that Parkus' "inability to control his impulses is the direct result of brain damage." Appellant's App. Vol. III, Tab 23, Exhs. 6–7.

The jury rejected Parkus' "inability to deliberate" defense and convicted him of first degree murder. At the penalty phase, Dr. Daniel reiterated his earlier testimony—that Parkus suffered from no mental disease or defect—but discussed Parkus' borderline mental retardation, low IQ, and history of abuse. Dr. Jayaratna restated his conclusion that Parkus had the capacity to understand and deliberate upon his actions. The jury sentenced Parkus to death, finding as aggravating circumstances Parkus' prior assaultive offenses, his incarceration at the time of the murder, and the victim's inmate status.

On direct appeal, the Missouri Supreme Court affirmed the conviction and sentence. *State v. Parkus*, 753 S.W.2d 881 (Mo.) (en banc), *cert. denied*, 488 U.S. 900, 109 S.Ct. 248, 102 L.Ed.2d 237 (1988). Parkus sought post-conviction relief unsuccessfully under Mo.S.Ct.R. 29.15 (1988), and the Missouri Supreme Court again affirmed. *Parkus v. State*, 781 S.W.2d 545 (Mo.1989) (en banc), *cert. denied*, 495 U.S. 940, 110 S.Ct. 2194, 109 L.Ed.2d 522 (1990). Parkus did not raise his claim of ineffective assistance of trial counsel for failing to investigate childhood records or the prosecutor's withholding of evidence in any of these state proceedings.

Parkus then petitioned for federal habeas relief, while contemporaneously filing for state habeas corpus relief under Mo.S.Ct.R. 91. Parkus also filed a Motion to Recall the Mandate in state court. Parkus raised in the Rule 91 proceeding the same ineffective assistance of counsel and suppressed evidence claims presented in his federal habeas petition. District Judge William Hungate stayed the federal proceeding, while granting Parkus' motion for an evidentiary hearing in federal court pending resolution of the Rule 91 motion. The Missouri Supreme Court

denied Parkus' petition for habeas corpus by summary order.

The district court, by order dated December 29, 1992, lifted the stay, vacated the earlier ruling on the evidentiary hearing, and denied Parkus' habeas petition, finding his claims either procedurally barred or without merit.[3] The district court thereafter denied Parkus' Fed.R.Civ.P. 59(e) motion to alter or amend the judgment. Parkus timely appealed.

## II. DISCUSSION

We first address the claims upon which we base our remand for an evidentiary hearing. We then analyze the remainder of Parkus' claims and determine that none warrant relief or further consideration on remand.

### A. Evidentiary hearing required

In the district court Parkus sought an evidentiary hearing in order to present evidence concerning a history of childhood mental disease. Parkus also sought to present evidence, allegedly withheld by the prosecutor, of prior consensual sex with the victim, of abuse suffered by the petitioner while in prison, and of records in the possession of the prison which contained information about child abuse inflicted on petitioner by his uncle.

The district court denied Parkus' motion for an evidentiary hearing because, in its view, Parkus failed to prove "cause and prejudice" to remove the procedural bar from his claims. Further, the district court was unpersuaded that any of the newly discovered evidence would likely have changed the outcome of petitioner's trial. We believe that Parkus has demonstrated cause and prejudice sufficient to warrant an evidentiary hearing on his ineffective assistance and suppressed evidence claims.

Parkus procedurally defaulted both of these claims by failing to raise them on direct appeal or in post-conviction proceed-

---

**3.** Judge William Hungate retired while proceedings were pending. Judge Donald Stohr suc-

ceeded Judge Hungate on the bench and ren-

ings.[4] "A [habeas] petitioner who has failed to develop evidence in state court must show cause and prejudice for that failure in order to merit an evidentiary hearing in federal court." *McKee v. Nix,* 995 F.2d 833, 835–36 (8th Cir.) (citing *Keeney v. Tamayo–Reyes,* —— U.S. ——, ——, 112 S.Ct. 1715, 1719 (1992)), *cert. denied,* —— U.S. ——, 114 S.Ct. 565, 126 L.Ed.2d 465 (1993). The existence of cause for a procedural default "ordinarily turn[s] on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). A petitioner may demonstrate an objective impediment to compliance with a procedural rule by showing that "the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable." *Id.* (internal citations and quotation marks omitted).

### 1. Ineffective assistance of counsel

■ As "cause" for failing to raise his claim of inadequate investigation into his mental health history in the state courts, Parkus alleges that DYS representative Matchett informed trial counsel that all mental health records from Parkus' youth had been destroyed. Trial counsel, according to Parkus, relied on Matchett's statement, and failed to further pursue institutional records even though petitioner's sole defense was that he suffered from a serious mental condition which affected his deliberative capacity. Parkus contends that he, counsel on direct appeal, and post-conviction counsel were all unaware of the falsity of Matchett's statement, and thus were unaware of trial counsel's "ineffectiveness."

The district court concluded that the petitioner's default for failing to raise this claim in the Rule 29.15 proceeding should not be excused because Parkus must have known of his own childhood mental illness and abuse. Indeed, Rule 29.15 requires the movant to raise "every ground known to the movant for

vacating, setting aside, or correcting the judgment or sentence." Mo.S.Ct.R. 29.15(d). Here, both Parkus and his trial counsel obviously knew their defense centered on defendant's impaired mental capacities. They did not know, however, and Parkus, a possibly mentally ill and borderline mentally retarded person, could not be expected to know, that mental health records from his various youth placements existed after being told the opposite by a state official. Matchett's untrue representation, made either intentionally or unintentionally, constituted "some interference by officials [which] made compliance [with the state procedural rule] impracticable." *Murray,* 477 U.S. at 488, 106 S.Ct. at 2645 (internal citation and quotation marks omitted).

■ We now turn to the question of whether Parkus has demonstrated actual prejudice. To establish actual prejudice in the context of an ineffective assistance claim, petitioner must meet the prejudice standard established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), by demonstrating a "reasonable probability that, but for ... [the] errors, the result of the proceeding would have been different." *Hollis v. Davis,* 941 F.2d 1471, 1480 (11th Cir.1991) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, and applying its prejudice standard where petitioner attempted to show cause and prejudice to avoid procedural default), *cert. denied,* —— U.S. ——, 112 S.Ct. 1478, 117 L.Ed.2d 621 (1992). Under this standard, a petitioner claiming that an attorney's deficient performance prejudiced him "need not show that he could not have been convicted. Instead, he need only undermine our confidence in the trial's outcome." *Foster v. Lockhart,* 9 F.3d 722, 726 (8th Cir.1993).

In evaluating prejudice under this standard, we take into consideration the additional evidence Parkus would have presented to the jury, including data indicating childhood mental illness (schizophrenia), mental retardation and psychosis. *See supra,* n. 2. The

---

dered the district court opinion now under review.

4. We need not address the issue of whether Missouri's post-conviction procedures afforded Parkus due process.

childhood psychological evaluations, unknown to Dr. Daniel at the time of the trial, were of sufficient importance to cause him to change his clinical opinion. Daniel now concludes that Parkus suffered from a mental disease or defect at the time of Steffenhagen's murder. Appellant's App. Vol. III, Tab 24, Exh. 5.

For the purposes only of cause and prejudice, we believe this new evidence, while having some bearing on guilt, could have had a stronger impact and effect on the penalty phase. Further, we determine that a reasonable probability exists that the jury, if given the opportunity to consider Parkus' additional evidence, would not have convicted him of first degree murder at the guilt phase, or, otherwise, would not have imposed the death penalty at sentencing.[5] Parkus' allegations of cause and prejudice are therefore sufficient to warrant an evidentiary hearing on his ineffective assistance of counsel claim.[6]

At the hearing the petitioner can further develop his evidence, and most importantly, may be able to cross-examine the State's psychological expert to determine if his clinical opinion might also be modified in light of the new evidence of Parkus' childhood mental illness. *Accord Ford v. Wainwright*, 477 U.S. 399, 415, 106 S.Ct. 2595, 2604, 91 .L.Ed.2d 335 (1986) (plurality opinion) (highlighting the importance of cross-examination

---

**5.** We note that the information contained in the psychological/psychiatric reports might have been useful to Parkus at the guilt or penalty phases beyond the conclusions stated therein. For example, the 1970 report noted:

> Steve's response to the TAT [Thematic Apperception Test] confirms the impression that the world is experienced by Steve as a dangerous place, or at best one of deprivation and needfulness. In 8 out of 14 pictures people commit suicide, in 3 others, they kill someone else, in another a man is going to kill another, and in yet another, a man kills a tiger. Hence, violent death is a dominant theme in Steve's fantasy life.

Appellant's App. Vol. III, Tab 24, Exh. 5C, at 3. On the same page, the clinician refers to Parkus' world (as a ten-year-old) as one "replete with aggression, death and mutilation.... Considerable unsublimated eroticism was also present...."

These clinical observations could have been used at trial to demonstrate the presence of serious psychological disturbance in early childhood, and at the sentencing phase as powerful mitigating evidence possibly reinforcing his brother's testimony concerning long-term abuse of Steven by his uncle.

**6.** "Reasonable performance of counsel includes an adequate investigation of facts, consideration of viable theories, and development of evidence to support those theories." *Foster v. Lockhart*, 9 F.3d 722, 726 (8th Cir.1993). The failure of counsel to adequately investigate a petitioner's mental health history and background can necessitate an evidentiary hearing. *See Buenoano v. Singletary*, 963 F.2d 1433, 1438 (11th Cir.1992) (petitioner stated claim of ineffective assistance during the penalty phase which required evidentiary hearing concerning defense counsel's failure to investigate, discover, and present mitigating mental health evidence). This court has not hesitated to order an evidentiary hearing when confronted with factual circumstances as compelling and unusual as those presented here. *See Houston v. Lockhart*, 982 F.2d 1246, 1253 (8th Cir.1993) (en banc) (evidentiary hearing required where petitioner demonstrated cause and prejudice based on defense counsel's ineffectiveness in failing to seek admission into evidence of favorable polygraph test); *Simmons v. Lockhart*, 856 F.2d 1144, 1146 (8th Cir.1988) (evidentiary hearing required to determine why habeas counsel on first petition failed to raise ineffective assistance claim); *Robinson v. Lockhart*, 823 F.2d 210, 214 (8th Cir.1987) (evidentiary hearing required to evaluate newly discovered evidence not previously discovered due to counsel's ineffectiveness). Even in cases where we have ultimately rejected the kind of claims brought here, it is clear that the petitioner at least had the opportunity to present his evidence at an evidentiary hearing before the case got to us. *See, e.g., Guinan v. Delo*, 5 F.3d 313 (8th Cir.1993) (declining to remove default created by successive habeas petition where petitioner convicted of first degree murder alleged ineffective assistance due to failure to investigate a mental defect which allegedly prevented him from "deliberating"; prior to final appellate ruling, however, district court conducted at least two evidentiary hearings on the psychological evidence presented).

Two additional factors favor granting an evidentiary hearing on this issue. First, the law draws a critical distinction between antisocial personality disorders, which do not relieve the defendant from criminal responsibility, and mental diseases or defects, which do. In this case, the defendant exhibited signs of both kinds of conditions. At trial the prosecutor attempted to paint Parkus as simply antisocial. Parkus is entitled to have considered his newly discovered proof that during childhood and early adolescence he had been diagnosed with a mental disease. Second, evidentiary hearings are particularly important in capital cases such as this one, where the "irremediable" penalty demands factfinding at a "heightened standard of reliability". *Ford v. Wainwright*, 477 U.S. 399, 411, 106 S.Ct. 2595, 2602, 91 L.Ed.2d 335 (1986) (plurality opinion).

of psychiatrists in sanity disputes). We leave it to the district court to determine the effect of this new evidence upon either or both of the penalty and guilt phases of Parkus' trial. For that determination, we call attention to *Hill v. Lockhart*, 28 F.3d 832 (8th Cir.1994), where differing standards applied to the guilt phase as compared to the penalty phase of the criminal trial.

We emphasize that our holding—that cause and prejudice exist to justify an evidentiary hearing—is in no way determinative of the merits of the underlying claim. That decision rests with the district court in the first instance.

### 2. Withholding of exculpatory evidence

■ We determine that Parkus is also entitled to an evidentiary hearing on his *Brady* claim. Under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963), a prosecutor violates the accused's due process rights when he refuses to disclose evidence favorable to the defendant which is material either to guilt or to punishment. Evidence is material only if there exists a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383–84, 87 L.Ed.2d 481 (1985). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Id.*

Parkus asserts that the prosecutor suppressed prison records which: (1) show that Parkus and Steffenhagen had consensual intercourse on at least one occasion prior to the murder, (2) document Parkus' abuse by other prisoners, and (3) contain information that Parkus' uncle abused him during childhood. While it is uncertain that proof of a former relationship with the victim is material to Parkus' guilt or sentence, the other two kinds of records bear on Parkus' mental state at the time of the killing, and are thus clearly material. Parkus contends that absent this evidence, the prosecutor could, and did, portray Parkus as a predator who selected Steffenhagen at random, and ridicule as untrue Chester's testimony corroborating Parkus' childhood abuse.

Petitioner acknowledges that he failed to present this claim to the state courts, but asserts "cause and prejudice" to remove the procedural default. We think Parkus has sufficiently alleged cause in that the prosecutor, though requested to do so, failed to furnish all records favorable and material to the defense. Parkus' appeals and post-conviction counsel relied on the information given to trial counsel that all relevant records and reports had been disclosed. This excuses their failure to raise the claims prior to resolution of the 29.15 proceeding. Parkus has also sufficiently demonstrated prejudice. Confidence in the outcome of the proceeding is undermined by the jury's inability to consider evidence which would have been offered as proof of lack of guilt (due to lack of mental element), and as mitigating evidence at sentencing. Again, our holding leaves determination of the merits of the underlying claim for the district court on remand.

### B. Parkus' other claims lack merit

#### 1. Prosecutor's comment on failure to testify

■ Parkus contends that the prosecutor infringed on his fifth amendment right not to testify by stating during closing argument:

> You can't, and I can't help you crawl inside that man's head and determine what he is thinking. It's not possible. You can only determine what a man is thinking by his actions, or if he tells you. And his actions speak loudly, don't they?

Appellant's App. Vol. I, Tab 3, at 311. Parkus' counsel failed to object at the time, and the petitioner now contends the trial court's failure to take *sua sponte* action after the prosecutor's comment constituted plain error. Parkus argues these remarks are even more direct than those condemned by this court in *United States v. Prine*, 909 F.2d 1109, 1111 (8th Cir.1990), *cert. denied*, 500 U.S. 954, 111 S.Ct. 2263, 114 L.Ed.2d 715 (1991), where the prosecutor remarked: "There's only two people who know what their intent was on that day, and they're sitting in this courtroom."

■ In this case, the prosecutor made an indirect reference to the defendant's decision not to testify. Indirect references to the

accused's decision not to testify are impermissible if they either (1) manifest the prosecutor's intention to call attention to the defendant's failure to testify, or (2) are such that the jury would naturally and necessarily take them as a comment on the defendant's failure to testify. *Williams v. Lockhart,* 797 F.2d 344, 347 (8th Cir.1986). On a habeas petition, we review any improper reference to determine if it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* —— U.S. ——, ——, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

After reviewing the trial transcript, we conclude, as did the Missouri Court of Appeals and the district court, that the prosecutor's comment did not violate Parkus' fifth amendment rights. The prosecutor made the comment in response to the defense attorney's arguments concerning lack of motive and deliberation; the gist of the prosecutor's responsive argument was that Parkus' actions prior to the slaying (e.g., bringing strips of bedding into Steffenhagen's cell) revealed motive and deliberation. Even if the comment were improper under *Williams,* we cannot say that it had a substantial or injurious effect or influence upon the jury's verdict. The prosecutor made a single short comment about petitioner's silence during a trial spanning several days. *Cf. Brecht,* —— U.S. at ——, 113 S.Ct. at 1722. The district court did not err in rejecting this claim.

### 2. Other prosecutorial comments

■ Parkus challenges on due process grounds other comments by the prosecutor which made it seem that the prosecutor personally believed this defendant deserved the death penalty more than others he had prosecuted. *See United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) (prosecutors and defense attorneys must refrain from interjecting personal beliefs into case presentation). Parkus procedurally defaulted on this claim by failing to raise it either on direct appeal or in Rule 29.15 proceedings. He fails to demonstrate cause and prejudice to avoid the procedural bar. Even

if we considered the merits of this claim, we would reject it because the petitioner cannot show that "absent the improper remark[s] the jury's verdict would have been different." *Hamilton v. Nix,* 809 F.2d 463, 470 (8th Cir.) (en banc), *cert. denied,* 483 U.S. 1023, 107 S.Ct. 3270, 97 L.Ed.2d 768 (1987).

### 3. Ineffective assistance of appellate counsel

Parkus argues that counsel in his Missouri appeal provided ineffective assistance by failing to brief four of the arguments presented in the instant petition. Because we reject, *infra,* the claims which Parkus asserts appellate counsel was ineffective for failing to preserve, we deny this point of error.

### 4. Exclusion of certain jurors

■ Parkus contends that his fifth, eighth and fourteenth amendment rights were violated by the exclusion for cause of several jurors who admitted during voir dire examination that they might "be affected" by the possibility of a sentence of death in this case. *See Adams v. Texas,* 448 U.S. 38, 50, 100 S.Ct. 2521, 2528–29, 65 L.Ed.2d 581 (1980) (excluding all jurors affected by the prospect of the death penalty deprives defendant of right to an impartial jury). Parkus failed to raise this issue on direct appeal or in his Rule 29.15 proceedings, and does not allege sufficient "cause" to remove the bar. No miscarriage of justice would result from our failure to review this claim on the merits.

### 5. Jury instruction on mitigating circumstances

■ The trial court issued the following mitigating evidence instruction:

If you unanimously find that one or more mitigating circumstances exist sufficient to outweigh the aggravating circumstances found by you to exist, then you must return a verdict fixing defendant's punishment at imprisonment for life....

*Parkus v. Delo,* No. 90–1007C(3) (E.D.Mo.), Resp. Ex. B, at 32 (Instr. 19). Parkus contends that this jury instruction violated his eighth amendment rights by permitting the jury to weigh mitigating evidence against the aggravating circumstances only if all jurors

agreed on the existence of one or more mitigating circumstances. *See Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988).

The district court found that Parkus procedurally defaulted this claim by failing to present it on direct appeal or in his 29.15 motion for post-conviction relief. We agree that petitioner procedurally defaulted this claim and demonstrates no ground to remove the default.

We also observe that this court recently upheld the constitutionality of the same instruction in *Battle v. Delo,* 19 F.3d 1547, 1562 (8th Cir.1994). Based on *Battle,* we would reject Parkus' claim on the merits.

### 6. Alleged dilution of reasonable doubt standard

 Parkus argues that the trial court violated his due process rights by issuing jury instructions which defined "beyond a reasonable doubt" as requiring proof which leaves one "firmly convinced" of the defendant's guilt. The district court ruled that Parkus defaulted on this claim by failing to present it to the state court. We agree that Parkus failed to preserve the issue or allege cause and prejudice to remove the default.

### 7. Aggravating circumstances

Parkus contends that the jury improperly found as aggravating circumstances three prior convictions, where neither judge nor jury ever found that the convictions were serious and assaultive.

This claim has no merit because all three prior convictions—for assault with intent to rape, assault with intent to rob, and rape and sodomy—were obviously both serious and assaultive. We also reject Parkus' claim that certain aggravating circumstances were duplicative.

## III. CONCLUSION

For the reasons stated herein, we remand this case for an evidentiary hearing and ruling on Parkus' ineffective assistance of counsel and *Brady* claims. We reiterate that this opinion does not bear on the merits of those claims. Parkus' remaining claims are with-

out merit and warrant no further consideration.