James WASHINGTON, Jr.,
Petitioner–Appellant,

v.

Paul K. DELO, Defendant–Appellee.

No. 94–2445.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 11, 1995.

Argued April 6, 1995.

pus relief. In 1993, he filed a second petition for a writ of habeas corpus. The district court concluded that Washington's second filing was successive and an abuse of the writ and denied his petition. Washington now appeals on the grounds that he has been denied the opportunity to prove his actual innocence which has resulted in a fundamental miscarriage of justice, or in the alternative, that the district court erred in failing to find sufficient cause and prejudice to overcome the procedural bar of his second petition and consider his claims on the merits. We reject these contentions and affirm the district court.

## BACKGROUND

Leroy Reason was murdered in his home on the evening of April 24, 1982. The exact time of the killing was never conclusively established, although it is alleged to have been sometime around dusk, between 6:30 and 8:00 p.m.

At trial, the details of which are more fully recounted at 707 S.W.2d 463, several witnesses testified that Washington was at the scene of the crime on the night in question. Maurice Hudson, a neighbor of the victim, testified that at around 6:00 or 6:30 on the evening of April 24, he saw and greeted a man walking near Reason's house who he later identified to be Washington. Hudson stated that a short time after this initial greeting, he and a friend, Jeff Dickens, who had joined Hudson on his front porch to smoke a marijuana cigarette, saw Washington walk up to the front door of Reason's house and knock. Both Dickens and Hudson testified that soon thereafter, they heard a commotion and popping noises emanate from Reason's home and then saw Washington leave the house and get into the passenger side of a gray Lincoln Continental. Hudson further identified the gray Continental that he saw as being owned by Carol Reason, the victim's wife, and testified that he saw Carol in the driver's seat when Washington entered the car. Finally, Hudson testified that he observed Carol Reason return home about

Stephen E. Rothenberg, St. Louis, MO, argued, for appellant.

Stacy L. Anderson, Jefferson City, MO, argued, for appellee.

Before BEAM, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WILL,* Senior District Judge.

WILL, Senior District Judge

Petitioner James Washington was convicted by a jury of capital murder in 1983 for the killing of Leroy Reason and is currently serving a life sentence. Following his trial in the Circuit Court of St. Louis County, Washington appealed to the Missouri Court of Appeals which affirmed his conviction. *State v. Washington,* 707 S.W.2d 463 (Mo.Ct.App. 1986). Washington then filed a motion for post conviction relief which, after an evidentiary hearing, was denied by the state Circuit Court and affirmed by the Missouri Court of Appeals. *Washington v. State,* 772 S.W.2d 728 (Mo.Ct.App.1989). In 1990, Washington filed for and was denied federal habeas cor-

---

* The HONORABLE HUBERT L. WILL, Senior United States District Judge for the Northern District of Illinois, Eastern Division, sitting by designation.

forty-five minutes later, at which time she discovered the body of her husband, fatally shot.

Other evidence supported the state's theory that Carol Reason had hired Washington to kill her husband. For example, Beverly Stricker, an acquaintance of Carol, testified that the night before the murder she had seen Carol talking to Washington at the bar that Carol owned and that the two had left together. Some weeks later Carol told Stricker that if anyone asked she should not mention that Carol had taken Washington home that night. It was also revealed that Leroy had informed Carol that he intended to divorce her, that the two had become involved in bitter disputes concerning that prospect, and that at one point Carol had told her sister that she was willing to "play dirty" if necessary. Bank records also showed that in the weeks proceeding the murder, Carol had withdrawn large amounts of cash from the bank account used for her bar, had closed an account that was listed under both her and her husband's name, and then deposited those funds into a new account opened with her daughter.

Washington denied any involvement with Carol or with Leroy Reason's murder, and claimed that he was somewhere else when it occurred. In support of this alibi, two of Washington's friends testified that he was with them at various times on the evening of April 24, 1982. Specifically, Sullivan Chaffen testified that Washington was at his house around 7:30 to 8:00 p.m. on the evening of the murder, and Rachel Brown stated that she was also at Chaffen's house with Washington that evening.

## DISCUSSION

This appeal concerns Washington's second federal habeas corpus petition which he filed on April 7, 1993. In that petition Washington asserted the following five grounds for relief:

1. trial court error in admitting into evidence hearsay testimony of Beverly Stricker over petitioner's objection;
2. trial court error in denying petitioner's motion to suppress the identification

testimony of Maurice Hudson and Jeff Dickens;
3. trial court error in admitting testimony of bank officials concerning Carol Reason and the Little Bits Bar;
4. ineffective assistance of counsel for not raising a *Batson* objection; and
5. ineffective assistance of counsel for not properly cross-examining Dr. Ronald P. Turgeon as to the exact time of the victim's death.

The district court reviewed these claims and dismissed the first four as an abuse of the writ and the fifth as successive. Washington now appeals claiming that he has been denied the opportunity to establish his actual innocence, resulting in a fundamental miscarriage of justice. Alternatively, he argues that the district court erred in not finding sufficient cause and prejudice to overcome the procedural bars to his second petition and allow his five claims to be addressed on their merits.

Subsequent to the filing of his briefs in support of this appeal, but before oral argument, Washington moved this court for permission to file two affidavits as additional exhibits. In the interest of full information, and despite their untimely submission, we grant this motion.

For clarity, we will first address Washington's cause and prejudice argument, and then turn to his claim of a fundamental miscarriage of justice.

### A. Cause and Prejudice

To begin, we note that federal courts are often barred from considering the merits of claims raised in a second or subsequent federal habeas petition. *Shaw v. Delo*, 971 F.2d 181, 184 (8th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1301, 122 L.Ed.2d 690 (1993). More specifically, claims in a later petition are properly dismissed either as successive, if they have been heard and decided on the merits in a previous petition, or as an abuse of the writ, if they were not previously raised but should have been. *Sawyer v. Whitley*, 505 U.S. ——, ——, 112 S.Ct. 2514, 2518, 120 L.Ed.2d 269 (1992) (citations omitted). These procedural

roadblocks are derived from the court's equitable powers as well as the statutory authority of 28 U.S.C. §§ 2244(b), 2254 rule 9(b), and are premised upon concerns for finality and judicial economy. *McCleskey v. Zant*, 499 U.S. 467, 479–90, 111 S.Ct. 1454, 1462–68, 113 L.Ed.2d 517 (1991).

▮ Dismissal of successive or potentially abusive habeas claims, however, is not automatic. If a petitioner can show cause for the failure to raise or fully develop his or her claims, and prejudice arising therefrom, a district court may consider the merits of these claims. *McCleskey*, 499 U.S. at 493–94, 111 S.Ct. at 1469–70; *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). In order to show the requisite cause and prejudice, a petitioner must generally show that some external impediment, such as "government interference or the reasonable unavailability of the factual basis for the claim," prevented him from raising his claims in his prior petition, and that this obstacle caused actual prejudice. *McCleskey*, 499 U.S. at 497, 111 S.Ct. at 1471–72.

In this appeal, Washington does not dispute that his first four habeas claims are new and that his fifth is repetitive. Rather, he argues that he has shown sufficient cause and prejudice to overcome these procedural bars. Specifically, he asserts that ineffective assistance of trial and post-conviction counsel prevented his first four claims from being presented and his fifth claim from being fully developed until his second federal habeas petition.

▮ Unfortunately for Washington, his claim of attorney error provides insufficient cause in this context as a matter of law. As explained by the Supreme Court, ineffective assistance of counsel can represent sufficient cause only when it rises to the level of an independent constitutional violation. *Coleman v. Thompson*, 501 U.S. 722, 755, 111 S.Ct. 2546, 2567–68, 115 L.Ed.2d 640 (1991). By definition, such a violation could not have occurred here because there is no sixth amendment right to counsel in federal habeas proceedings. *Harris v. Vasquez*, 949 F.2d 1497, 1513–14 (9th Cir.1990), *cert. denied*, 503 U.S. 910, 112 S.Ct. 1275, 117 L.Ed.2d 501 (1992); *Pennsylvania v. Finley*, 481 U.S.

551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987). Therefore, as recently reiterated by this circuit, the failure of petitioner's first habeas counsel cannot constitute cause sufficient to overcome the successive and abusive nature of his subsequent petition. *Shaw*, 971 F.2d at 184.

▮ Washington's claim that he had ineffective assistance of counsel prior to his first federal habeas appeal does not change the result here. Earlier attorney error, even if constitutional in scope, cannot constitute cause for his failure to present and develop all of his claims in his first federal petition. Claims of ineffective assistance of counsel in petitioner's state court proceedings should have been made, and at least partially were made, in Washington's first federal petition. Returning full circle, we repeat that ineffective assistance of federal habeas counsel is insufficient cause to allow even claims of ineffective assistance of counsel to be reargued or presented for the first time in a subsequent petition. *See Coleman*, 501 U.S. at 755–56, 111 S.Ct. at 2567–68.

▮ The abuse of the writ doctrine and the prohibition against successive claims are both based upon the proposition that petitioners should include all reasonably available claims and grounds for relief in their first habeas petition. *McCleskey*, 499 U.S. at 498, 111 S.Ct. at 1472–73. Washington has failed to abide by this requirement. As the district court found, the factual basis for the claims in Washington's second federal habeas petition were available at the time of his first. Moreover, as described above, his current attempt to show cause due to ineffective assistance counsel fails as a matter of law. Since no cause has been shown, we need not reach the issue of prejudice. We therefore conclude that Washington's second petition is successive and an abuse of the writ.

### B. Fundamental Miscarriage of Justice

▮ Even if a federal habeas petitioner cannot show cause and prejudice, he may still be entitled to have his successive or abusive claims heard on their merits if he can show that failure to do so would result in a fundamental miscarriage of justice. This is a nar-

row exception, however, reserved for extraordinary circumstances and explicitly tied to a petitioner's actual innocence. *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Kuhlmann v. Wilson*, 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986); *Smith v. Murray*, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986). To qualify, as recently clarified by the Supreme Court, a petitioner must show that a constitutional violation has "probably resulted" in the conviction of an innocent person. *Schlup v. Delo*, —— U.S. ——, —— ——, 115 S.Ct. 851, 867–68, 130 L.Ed.2d 808 (1995).

In his attempt to satisfy the miscarriage of justice exception, Washington asserts that the ineffectiveness of his counsel, combined with several trial errors, deprived him of the opportunity to adequately present his alibi defense and prove his actual innocence. Specifically, he argues that if the exact time of the murder had been established, and if all of his alibi witnesses had been called to testify, they would have revealed that he was elsewhere when the murder occurred.

■ Washington's claim of actual innocence is not by itself a constitutional claim, but rather a gateway through which he seeks to have his otherwise procedurally barred habeas claims considered on their merits. *Herrera v. Collins*, 506 U.S. ——, ——, 113 S.Ct. 853, 862, 122 L.Ed.2d 203 (1993). If he can succeed in presenting evidence of his innocence such that we "cannot have confidence in the outcome of [his] trial unless we are also convinced that the trial was free of nonharmless constitutional error," we will allow him to pass through the gateway and argue the merits of the claims contained in his second petition. *Schlup*, —— U.S. at ——, 115 S.Ct. at 861. For this to occur, we must be persuaded that, in light of all the evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at —— —— ——, 115 S.Ct. at 867–68.

■ Our inquiry here is not limited to the evidence presented at trial, and is not constrained by those rules of admissibility. *Schlup*, —— U.S. at ——, 115 S.Ct. at 867. Rather, in the interests of justice, we consider all probative evidence in an effort to assess a petitioner's claim of innocence. With that in mind, we turn to the only new evidence presented by Washington—the two recently submitted affidavits. The first is of a friend of Washington's, Rachel Brown, who states that she was at the home of Sullivan Chaffen on the night of the murder and that Washington arrived there sometime between 6:30 and 7:00 p.m. After about one half hour, Brown states that she drove Washington to his home which was about fifteen minutes away. The second affidavit is of Washington's cousin, Rosie Evans. She states that on the night of the murder, Washington arrived at her house drunk with his girlfriend at around 8:15 to 9:00 p.m., and that it would have taken them about one hour to get there from Washington's home on the bus.

These statements do not represent the type of exculpatory evidence that is necessary to meet the miscarriage of justice exception. In short, the affidavits of Rachel Brown and Rosie Evans do not persuade us that no reasonable juror would have found Washington guilty had they heard these statements at trial. At best, these affidavits serve only to narrow the time frame in which Washington could have committed the crime. At worst, they can be considered potentially biased statements made by a friend and a relative about events that are now over twelve years old. Moreover, we are mindful that the jury had an opportunity to hear from Rachel Brown when she testified at Washington's trial. Her new statements run counter to those made by Sullivan Chaffen in 1983, and to the extent that they contradict or are more detailed than her own prior testimony, we must question their accuracy. As for the statements of Rosie Evans, we find that, although they are new, they shed little probative light on our inquiry.

Finally, Washington claims that if the exact time of the murder had been ascertained, or if the credibility of the two identification witnesses had been properly destroyed, his innocence would have been established. No new evidence has been provided in support of these assertions, however, and they therefore remain nothing more than naked speculation. We thus remind petitioner that our role is

not to repeat what has been done at trial, *Herrera*, 506 U.S. at ——, 113 S.Ct. at 860–61, but rather only to weed out the rare case in which a fundamental miscarriage of justice may have occurred. In sum, we conclude that Washington has failed to raise sufficient doubt about his guilt to justify a review of his underlying constitutional claims.

## CONCLUSION

For the above stated reasons, we conclude that the claims in Washington's second federal habeas corpus petition are successive and an abuse of the writ and that Washington has failed to show sufficient cause to overcome these procedural bars. Further, we conclude that Washington has failed to support his claim of actual innocence, and therefore, the district court's refusal to hear the merits of his abusive and successive habeas claims has not resulted in a fundamental miscarriage of justice. No further evidentiary hearing is necessary and the judgement of the district court is hereby affirmed.