**Marvin C. JONES, Appellant,**

v.

**Paul DELO, Appellee.**

No. 94–2849.

United States Court of Appeals, Eighth Circuit.

Submitted March 15, 1995.

Decided May 31, 1995.

R. Thomas Day, Asst. Federal Public Defender, argued, for appellant.

Michael J. Spillane, Asst. Atty. Gen., argued, for appellee.

Before McMILLIAN, FAGG, and WOLLMAN, Circuit Judges.

WOLLMAN, Circuit Judge.

Marvin C. Jones, a Missouri inmate facing a sentence of death, appeals from the district court's denial of his second amended petition for a writ of habeas corpus. Jones asserts manifold points of error and also seeks a remand of the case for reconsideration of newly proffered evidence in light of the Supreme Court's decision in *Schlup v. Delo,* —— U.S. ——, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

In addition to finding almost all of Jones's claims to be procedurally barred, the district court addressed them on the merits. Because reconsideration of the new evidence would not affect the ultimate disposition of Jones's claims, we decline to remand the case for that purpose. We also affirm the district court on the remainder of Jones's points of error.

## I. Background

Jones was convicted of capital murder in Missouri on November 15, 1984, and the jury recommended a death sentence the following day. The details of the crime are laid out in the Missouri Supreme Court's affirmance of Jones's conviction on direct appeal, *State v. Jones,* 705 S.W.2d 19 (Mo. banc), *cert. denied,* 477 U.S. 909, 106 S.Ct. 3286, 91 L.Ed.2d 574 (1986), and are summarized here. The victim, Dorothy Fienhold, was 58 years old and lived in Illinois, as did Jones. Jones and Fienhold had been involved in a tempestuous relationship for several years prior to Fienhold's murder. Sometime in August 1983, Fienhold expressed her desire to end the relationship. She also expressed her fear of Jones to others when Jones began following her shortly thereafter. On August 20, 1983, Jones became upset when he observed Fienhold in the company of another man. The next morning Jones telephoned Fienhold. Fienhold's granddaughter testi-

fied at trial that during the course of this conversation Fienhold told Jones that she would not go to Missouri with him.

The following morning, August 22, authorities were alerted to an abandoned car near Interstate 44 several miles west of Cuba, Missouri. The vehicle was registered in Jones's name. The police found a pile of clothes in the car as well as blood stains on the car's interior. A search of the area yielded a bloody pair of pants and two bloody sheets. Fienhold's body was eventually discovered in a wooded area along the side of the road. The cause of death was identified as "two contact gunshot wounds at the point of each eyeball, either one of which was fatal," *Jones*, 705 S.W.2d at 20–21, but Fienhold had also been severely beaten, as evidenced by several broken ribs, and manually strangled. Some military papers identifying Jones were found at the scene, and he was also identified by several witnesses as having been in the area.

Jones's attempts at post-conviction relief in the state courts were denied. *Jones v. State*, 767 S.W.2d 41 (Mo. banc), *cert. denied*, 493 U.S. 874, 110 S.Ct. 207, 107 L.Ed.2d 160 (1989). His initial attempt at federal habeas relief was dismissed without prejudice for failure to exhaust state remedies, but we vacated the district court's dismissal order, *Jones v. Armontrout*, 923 F.2d 860 (1990) (table), *cert. denied*, 499 U.S. 954, 111 S.Ct. 1432, 113 L.Ed.2d 483 (1991), following the denial of his petition for state habeas relief.

## II. "Actual Innocence" Claim

■ Jones raised twenty-seven claims of ineffective assistance of counsel in his petition for relief in the district court. The district court found that all but one of these claims were procedurally defaulted because Jones failed to either preserve them at trial or present them in his appeal from the denial of his state motion for post-conviction relief. All of Jones's additional points of error were also deemed procedurally defaulted. *See Jones*, 767 S.W.2d at 43 (noting that Jones abandoned all his claims except ineffective assistance of trial counsel for failure "to present mitigating character evidence at the penalty phase"); *see also Gilmore v. Armon-*

*trout*, 861 F.2d 1061, 1065–66 (8th Cir.1988) (procedural bar under former Missouri Rule 27.26), *cert. denied*, 490 U.S. 1114, 109 S.Ct. 3176, 104 L.Ed.2d 1037 (1989); *Lowe–Bey v. Groose*, 28 F.3d 816, 818 (8th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 674, 130 L.Ed.2d 606 (1994) (same procedural bar arises for failure to appeal under current Missouri Rule 29.15). Jones claims that he now has sufficient new evidence of his actual innocence to avoid the bar and have his claims heard on the merits.

To invoke the actual innocence exception to the procedural default as a gateway to considering the merits of his constitutional claims as to the guilt phase, Jones "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, —— U.S. at ——, 115 S.Ct. at 867 (adopting the *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), standard for gateway claims of actual innocence as to guilt phase). The *Sawyer v. Whitley* standard of clear and convincing evidence remains the benchmark for claims of actual innocence sufficient to raise the procedural bar with respect to penalty phase claims. —— U.S. ——, ——, ——, 112 S.Ct. 2514, 2517, 2525, 120 L.Ed.2d 269 (1992). Jones proffers evidence averring that he suffers from an organic brain disease that impairs his mental capacity. Included in the evidence is an affidavit of Dr. A.E. Daniel, a psychiatrist who examined Jones prior to trial and believed him capable of deliberation at the time of the killing. Doctor Daniel now asserts that had he known then what he now knows regarding Jones's mental aptitude and apparent organic brain disease, he would have found Jones incapable of deliberation at the time of the killing. Similarly, Dr. Gary L. Bassett, who testified at the penalty phase concerning Jones's personality disorder, has submitted an affidavit stating that he now believes that Jones was incapable of deliberation at the time of the killing. Jones's other newly offered evidence likewise professes that Jones was incapable of deliberation the day he killed Ms. Feinhold.

■ Jones contends that the district court should be given the initial opportunity

of determining whether his new evidence is sufficient under *Schlup* to bypass the procedural bar to his constitutional claims. The state counters that even if the clinical evidence now offered by Jones is accepted as uncontroverted, the brutality of the killing provides a sufficient inference of deliberation to maintain the bar. "[T]he mere existence of sufficient evidence to convict," however, is not determinative under the *Schlup/Carrier* standard. ——— U.S. at ———, 115 S.Ct. at 869. Rather, the relevant inquiry is whether it is more likely than not that no reasonable juror fairly considering all the evidence, including the new evidence, would have found Jones guilty of capital murder beyond a reasonable doubt. *See id.* at ———, 115 S.Ct. at 867. The answer to this question necessarily requires a determination that a reasonable juror would find Jones capable of deliberation despite the new evidence to the contrary.

 The state also argues that even if all Jones's evidence is true, that evidence does not show that Jones is actually innocent of capital murder. Rather, the state contends that an inability to deliberate merely gives rise to a claim of legal innocence. The state's argument, however, tacitly disavows an essential element of the crime of capital murder—the ability to deliberate. Although "[a] prototypical example of 'actual innocence' ... is the case where the State has convicted the wrong person of the crime," *Sawyer,* ——— U.S. at ———, 112 S.Ct. at 2519, one is also actually innocent if the State has the "right" person but he is not guilty of the crime with which he is charged. *See Schlup,* ——— U.S. at ———, 115 S.Ct. at 864 (noting prisoner interest in relief " 'if he is innocent of the charge for which he was incarcerated' " (quoting *Kuhlmann v. Wilson,* 477 U.S. 436, 452, 106 S.Ct. 2616, 2626, 91 L.Ed.2d 364 (1986) (plurality opinion))). Should Jones's contention that he could not deliberate prove true, he would have been incapable of satisfying an essential element of the crime for which he was convicted. *See* Mo.Rev.Stat. § 565.001 (1978) (repealed by L.1983, S.B. No. 276, p. 922, § 1). This meets the definition of actual innocence. *See Nave v. Delo,* 22 F.3d 802, 810 (8th Cir.1994) (claim of actual innocence lies when negation of intent negates an essential element of the crime),

*vacated on other grounds,* ——— U.S. ———, 115 S.Ct. 1086, 130 L.Ed.2d 1057 (1995); *Johnson v. Hargett,* 978 F.2d 855, 860 (5th Cir. 1992) (noting that one is actually innocent if "a reasonable trier could not find all the elements necessary to convict the defendant"), *cert. denied,* ——— U.S. ———, 113 S.Ct. 1652, 123 L.Ed.2d 272 (1993); *see also Sawyer,* ——— U.S. at ———, 112 S.Ct. at 2522 (negation of element of intent); *id.* at ———, 112 S.Ct. at 2521 (noting that negation of an element of the offense accords with the "strictest definition" of "actual innocence"). Although Jones is responsible for the victim's death in the sense that he was the causative agent that inflicted the mortal wounds, his alleged incapacity to form the predicate deliberative intent, without which he could not have been found guilty of capital murder, differentiates his claim from one of mere legal innocence.

 The state further asserts that this court is adequately equipped to apply the *Schlup* test without an intermediary remand to the district court. Although *Schlup* itself necessitated a remand, *see* ——— U.S. at ———, 115 S.Ct. at 869, and in certain instances we will apply *Schlup* without initial consideration from the district court, *see, e.g., Washington v. Delo,* 51 F.3d 756, 761–62 (8th Cir.1995); *Barrington v. Norris,* 49 F.3d 440, 441–42 (8th Cir.1995) (per curiam), we find the application of *Schlup* nonessential to our resolution of this issue. Because the district court has already addressed Jones's guilt phase claims on the merits, remanding the case to determine the propriety of a procedural bar would serve no identifiable purpose. *Cf. LaRette v. Delo,* 44 F.3d 681, 688 & n. 5 (8th Cir.1995) (noting, in a case similar to this one in many legal respects, that the lower *Kuhlmann* standard was not met because of the nature of a pretrial psychiatric evaluation and the petitioner's earlier insistence that he was competent at the time of the murder for which he was convicted). For the same reason, we need not address Jones's further request for an evidentiary hearing relating to the procedural bar of his guilt phase claims.

■ Jones also seeks an evidentiary hearing on the issue of the procedural bar encumbering his penalty phase claims, as well as on the merits of a number of substantive issues: 1) various ineffective assistance of trial counsel claims stemming from both the guilt and penalty phases of his trial; 2) ineffective assistance of appellate counsel; 3) ineffective assistance of post-conviction counsel; 4) ineffective psychiatric examination; 5) invalid admission of statements to police; 6) insufficient evidence of deliberation; 7) insufficient evidence of torture; and 8) improper submission of invalid prior convictions.

■ "To merit an evidentiary hearing in federal court, a habeas petitioner who has failed to develop evidence in state court must show cause and prejudice for that failure." *Sidebottom v. Delo*, 46 F.3d 744, 750 (8th Cir.1995); *see Keeney v. Tamayo–Reyes*, 504 U.S. 1, 8–12, 112 S.Ct. 1715, 1719–21, 118 L.Ed.2d 318 (1992); *Parkus v. Delo*, 33 F.3d 933, 938 (8th Cir.1994). Jones has made an insufficient showing that he is entitled to an additional evidentiary hearing under that standard. As to his ineffective assistance claims, Jones was given the opportunity to present evidence in the state courts following his conviction and has not shown any objective impediment to his ability to have done so. *See Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991); *Carrier*, 477 U.S. at 488, 106 S.Ct. at 2645; *Parkus*, 33 F.3d at 938. Nor has Jones shown that the denial of an additional hearing would result in a fundamental miscarriage of justice under either a "more likely than not" or "clear and convincing" standard.[1] Jones's uncontradicted affidavits and proposed testimony fail to convince us of the necessity for a further evidentiary hearing on either his guilt or penalty phase claims. The

new medical evidence pertaining to Jones's condition is not dispositive on the issue of counsel's performance.[2] In a nutshell, there is nothing further for Jones to develop on his ineffective assistance claims. *See generally Townsend v. Sain*, 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963) (listing situations where a hearing is appropriate). Additionally, the fact that this newly discovered evidence is so late in coming to our attention also militates against allowing Jones yet another opportunity to relitigate his case. *See Schlup*, —— U.S. at ——, 115 S.Ct. at 869 (noting that "the Court may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence"). Claims 2), 3), and 5) can all be resolved as a matter of law in this case, and will be addressed in Parts III.B.2 and IV. Claim 8) relates to sentencing, and we find an insufficient showing of "actual innocence" under *Sawyer* to lift the procedural bar. Further, Jones has failed to address arguments 4), 6), 7), and 8) except to say that they warrant an evidentiary hearing. "By failing to specify why ... these grounds entitled him to an evidentiary hearing, [Jones] has waived any right to have us consider his argument." *Sidebottom*, 46 F.3d at 750.[3]

### III. Ineffective Assistance of Counsel Claims

### A. Guilt Phase Claims

### 1. failure to conduct a reasonable investigation into background and mental health

■ Jones asserts that his trial counsel was constitutionally defective in failing to adequately investigate Jones's mental state and present an insanity or diminished capacity defense. Because of this deficiency, Jones

1. See our discussion in Part III.B.2 as to Jones's further attempts to bypass his procedural default in the context of his penalty phase claims.

2. The potential merits of Jones's ineffective assistance claims are related to the need for an evidentiary hearing, *see Parkus*, 33 F.3d at 939 n. 6, and our discussion in Part III adequately addresses that issue.

3. In a footnote to his brief, Jones urges that the state and district courts made insufficient factual

findings to enable review on the merits of a number of his guilt and penalty phase claims and asks that they be remanded to the district court for further development in accordance with Fed. R.Civ.P. 52. These additional claims were sufficiently treated in the courts below and so lack merit as to not warrant additional discussion. Additionally, such incorporation by reference is prohibited under 8th Cir. R. 28A(j), and we deem these arguments waived. *See Sidebottom*, 46 F.3d at 750 & n. 3.

claims, the jury was denied essential information about his mental illness that would have swayed the result of this case. To succeed on his ineffective assistance claims, Jones must show that counsel's performance was deficient and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S.Ct. at 2064. We find that counsel made no such errors in this instance.

The record makes clear that counsel did not overlook the possibility of a diminished capacity defense. Indeed, counsel sought out competency and capacity examinations for Jones. Doctor Daniel's pre-trial psychological report noted that although Jones was emotionally unstable, "he displayed no symptoms of a psychotic disorder." This report further indicated that "Jones refused to cooperate with additional psychological testing" that could further develop and explain the extent of any intellectual deficiencies. Doctor Daniel found it difficult to render an opinion as to mens rea because Jones "vehemently denied the alleged conduct," but stated that Jones did not suffer from a mental disease or defect that would prevent him from appreciating the nature of his conduct. Counsel then sought an additional psychological examination from Dr. Bassett. Jones claims that this examination was insufficient because Dr. Bassett was not aware of all the relevant circumstances of the crime when he evaluated Jones.

■ As an initial matter, we note that counsel in this instance would not have been required to seek an additional examination had he not retained legitimate concerns about Jones's mental capacity. *See Sidebottom,* 46 F.3d at 753; *O'Neal v. Delo,* 44 F.3d 655, 660 (8th Cir.1995). That portion of the barred claim that can be construed as relating to the conviction itself must fail on the merits. Trial counsel stated that he made a strategic decision to limit Bassett's knowledge of the crime because the communica-

tions would not be in confidence and would lose any potential privileged status.

Jones's ineffective assistance claim is directly rejected by our recent decision in *La-Rette.* Most damaging to Jones's claim is the fact that Jones himself insisted that trial counsel not submit an insanity or diminished capacity defense. *See LaRette,* 44 F.3d at 685–86. Jones also refused to testify, further thwarting counsel's efforts to present any such defense. *Id.* Rather than a competency defense, Jones wanted to propose the theory that the crime was committed by Latin drug dealers, who threatened his life if he told the truth about the crime. *See Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066 (noting that counsel's conduct must be viewed in light of information provided by client). There is also nothing in the record indicating that Jones did not appreciate the nature of the charges and was incapable of assisting in his own defense. *See O'Neal,* 44 F.3d at 660. The facts of the crime further attest to a strong inference of deliberation. Jones stalked Fienhold for several days, murdered her in a secluded area far from home, mutilated and hid the body, and disposed of the murder weapon. In the face of these facts and all the other relevant circumstances, we cannot say that trial counsel's investigation "fell below an objective standard of reasonableness," *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065, and that any additional effort on that issue would have changed the jury's ultimate disposition of the case.

### 2. additional guilt phase claims

■ Jones also challenges trial counsel's statement to the jury during closing argument that he was appointed by the court. Although we certainly do not approve of such comments, *see Goodwin v. Balkcom,* 684 F.2d 794, 806 (11th Cir.1982), *cert. denied,* 460 U.S. 1098, 103 S.Ct. 1798, 76 L.Ed.2d 364 (1983), this particular statement was not so prejudicial, either alone or in conjunction with Jones's additional asserted errors, as to have possibly altered the outcome of this case. The further alleged failures of counsel to object to numerous statements by the prosecutor during the course of both the

guilt and penalty phases of the trial are also without merit. In the district court, Jones pointed to twenty-six allegedly prejudicial remarks by the prosecution that went uncontested at trial. Having reviewed the contested statements, we agree with the district court that they suffer from no constitutional infirmity. The vast majority of the comments and arguments were permissible, and counsel was in no way defective for not objecting to them. A prosecutorial comment that misconstrued the nature of the defense was objected to; the trial court sustained the objection and instructed the jury to disregard the offending statement. Counsel was certainly not ineffective in this instance, and the statement itself was not so objectionable as to prejudice the proceedings.

## B. Penalty Phase Claims

### 1. failure to present mitigating evidence

■ Jones's claims relating to trial counsel's failure to present mitigating evidence to the jury regarding Jones's psychiatric history, military record, and family background have been properly preserved throughout the history of this case. None of these claims, however, is meritorious. Counsel's failure to interview family members for background information and further information relating to Jones's childhood was predicated primarily on the fact that Jones did not provide counsel information about his family that would enable counsel to contact them and conduct a fuller investigation. See Strickland, 466 U.S. at 691, 104 S.Ct. at 2066. Counsel did in fact interview the one relative suggested by Jones, his ex-wife, who eventually testified for the prosecution. Further, the Missouri courts found that relatives displayed "apparent disinterest" in assisting the defense. Jones, 767 S.W.2d at 44. This finding is entitled to a presumption of correctness, 28 U.S.C. § 2254(d), and Jones has not persuaded us otherwise. Further still, not putting family members on the stand in an attempt to adduce mitigating evidence was entirely reasonable in this case because such testimony would have opened the door for the state to cross-examine the relatives about Jones's prior convictions for incest and attempted manslaughter. See Sidebottom, 46 F.3d at 754.

■ Counsel's failure to discover and present evidence about Jones's military record was similarly reasonable and nonprejudicial. This evidence was as likely to arouse a jury's passion for retribution as to evoke any sympathy for Jones. See id. Jones did serve in World War II and received an honorable discharge following that service. Following his stint during the war in Korea, however, Jones was discharged in lieu of a general court martial because of his tendency to be absent without leave. Indeed, "his military record underscores for the jury the image of a man with a history of lawless and anti-social behavior." Jones, 767 S.W.2d at 45. This evidence would not tend to mitigate much of anything and would also have contradicted any defense assertion that Jones was a relatively placid, law-abiding citizen prior to a 1974 heart attack that exacerbated his brain disorder.

■ We also agree with the district court that trial counsel's actions were reasonable regarding the production of evidence relative to Jones's mental and psychiatric history. A military psychologist found Jones "unfit for the military service" but free from mental disease or defect as to know right from wrong. Introducing the results of this examination would have entailed the aforementioned problems regarding Jones's discharge. Introduction of evidence of the 1976 psychiatric examination conducted in conjunction with a prior incest conviction would have opened the door to a host of unpleasant facts for further consideration by the jury. Counsel did have Dr. Bassett testify as to Jones's organic personality syndrome. Jones's additional assertion regarding the amount of information provided to Dr. Bassett is procedurally barred in this context. Jones cannot show "actual innocence" under Sawyer, see — U.S. at ——, 112 S.Ct. at 2523 (noting that focus must be "on those elements which render a defendant eligible for the death penalty, and not on additional mitigating evidence"), or sufficient cause and prejudice to raise the bar, and this claim is similarly without merit.

### 2. additional penalty phase claims

■ Jones's additional contentions as to the penalty phase and sentencing are all

procedurally barred. Jones claims that the bar should be lifted as to these claims because the Missouri Supreme court must review sentencing decisions for error. This argument fails because we have previously found this mandatory review to be limited to matters of state law. *LaRette*, 44 F.3d at 687. Jones further asserts that the retroactive application of Missouri's procedural requirements is inimical to the constructs of constitutional justice. This argument too must fail. Former Missouri Rule 27.26 did not allow a petitioner free hand in filing successive petitions, *see Gilmore*, 861 F.2d at 1065–66, and these claims would have been barred under either the old scheme or the new. *See Jones*, 767 S.W.2d at 42–43 (noting that all but the claim as to mitigating circumstances were abandoned by Jones). Additionally, Jones contends that any procedural bar must fail because Missouri's rapid setting of execution dates constitutes cause for his procedural defaults. This argument is foreclosed by our recent decision in *LaRette*, 44 F.3d at 687. Jones also asserts as cause for his default the ineffective assistance of counsel at each and every stage of the legal process. Our earlier discussion of trial counsel's actions under the *Strickland* analysis sufficiently counters this contention. Accordingly, appellate counsel was not then inadequate in failing to brief every merely colorable claim on appeal. *See Smith v. Murray*, 477 U.S. 527, 535–36, 106 S.Ct. 2661, 2666–67, 91 L.Ed.2d 434 (1986). Also, "[t]here is no constitutional right to counsel in state post-conviction hearings; there can be, therefore, no constitutionally ineffective assistance that could justify issuing the Great Writ on this ground." *Foster v. Delo*, 39 F.3d 873, 877 (8th Cir.1994) (en banc), *cert. denied*, ——— U.S. ———, 115 S.Ct. 1719, 131 L.Ed.2d 578 (1995); *see Sidebottom*, 46 F.3d at 751 (post-conviction counsel's ineffective assistance cannot serve as cause for procedural default); *Battle v. Delo*, 19 F.3d 1547, 1553 (8th Cir.1994) (same). Nor has Jones shown "by 'clear and convincing evidence' that but for the claimed constitutional error[s], no reasonable juror would find him eligible for the death penalty under Missouri law." *Battle*, 19 F.3d at 1554 (quoting *Sawyer*, ——— U.S. at ———, 112 S.Ct. at 2523).

Moreover, we find that Jones's penalty phase claims also lack merit. Counsel made a remark during his statement to the jury that Jones asserts equated an organic brain disease with the aggravating factor of depravity of mind. Having reviewed the record, we conclude that to give counsel's remark the interpretation advanced by Jones would strain the language used beyond a permissible reading. Counsel's further erroneous mention of a prior assault conviction was predicated on a belief that the prosecution would attempt to prove the offense as a potential aggravating factor for the jury's consideration. Additionally, because no evidence of this conviction was actually adduced, it can be presumed that the jury properly fulfilled its role and disregarded the comment. As to Jones's assertion that his sentence was imposed in an arbitrary and capricious manner because of the actions of counsel and the trial court, there is no evidence that the state trial judge was unaware of his proper role in sentencing or of Jones's relevant background information. Thus, there is no merit to the contention that there was not the consideration of individualized factors required as a condition to imposing a sentence of death. *See Zant v. Stephens*, 462 U.S. 862, 879, 103 S.Ct. 2733, 2744, 77 L.Ed.2d 235 (1983).

## IV. Admission of Incriminating Statements

Jones next asserts that he was incapable of making a knowing, intelligent, and voluntary waiver of his *Miranda* rights because of his organic brain disease and borderline retardation, thus rendering inadmissible the statements he gave to the police while in custody. The district court discussed this claim on the merits, but based its holding on the procedural bar. The merits are so clear, however, that we turn immediately to them. This argument, as well as Jones's further claims that trial counsel's failure to produce evidence of Jones's inability to make a valid waiver prejudiced his trial, fail for the same reason; it is excusable to fail to produce evidence that demonstrates a defendant's inability to exercise a *Miranda* waiver when there is no such evidence to

produce. Despite Jones's limitations, there was no evidence available to counsel that would suggest that Jones was incapable of making such a waiver. Additionally, such an inquiry is properly framed in a manner that focuses on potentially coercive police conduct, of which we have no evidence; and Jones's mental impairments did not, of themselves, vitiate any valid waiver of his rights. *See Colorado v. Connelly,* 479 U.S. 157, 164, 167, 107 S.Ct. 515, 520, 521–22, 93 L.Ed.2d 473 (1986); *LaRette,* 44 F.3d at 688–89; *Battle,* 19 F.3d at 1563–64. Any further assertion of error on the part of trial counsel relative to the admission of the statements also fails because trial counsel in fact did seek their suppression, did object to their admission, and did raise the issue again in his motion for a new trial and on direct appeal. We give no credence to a claim of constitutionally defective assistance of counsel in light of these circumstances.

## V. Jury Instruction Claims

### A. Overbreadth of Aggravating Circumstance

■ Jones next argues that instruction number 20, which required the jury to determine "[w]hether the murder ... involved torture or depravity of mind and as a result thereof it was outrageously or wantonly vile, horrible or inhuman" was constitutionally defective. The district court found this assertion to be procedurally barred because Jones failed to reassert the claim in his attempts at post-conviction relief. The state has apparently waived any bar on appeal, however, by addressing solely the merits of this claim. Accordingly, we also direct our attention to the merits.

■ Standing alone, the aggravating factor of "depravity of mind" is impermissible. *Battle,* 19 F.3d at 1562; *see Sidebottom,* 46 F.3d at 755. So too, standing alone, is an aggravating factor finding the offense "outrageously or wantonly vile, horrible and inhuman." *Godfrey v. Georgia,* 446 U.S. 420, 428–29, 100 S.Ct. 1759, 1764–65, 64 L.Ed.2d 398 (1980); *see Maynard v. Cartwright,* 486 U.S. 356, 363–64, 108 S.Ct. 1853, 1858–59, 100 L.Ed.2d 372 (1988). In this instance, however, the instruction contained the additional

element of torture. *See Battle,* 19 F.3d at 1562. "A finding of torture is sufficient to properly narrow the class of persons eligible for the death penalty." *LaRette,* 44 F.3d at 686. The instruction as written, however, includes this "limiting" factor in the alternative. Accordingly, a jury could conceivably have found some inchoate notion of depravity of mind without a finding of torture. The jury, however, did make a specific finding as to the torture of the victim in this case, as evidenced by the "strangulation of neck, broken ribs, various bruises and contusions to body previous to death." *Jones,* 705 S.W.2d at 21. This specific finding eliminates any taint that might otherwise have resulted from the complained-of factor because the jury's decision was based on a valid aggravating factor. *See Sidebottom,* 46 F.3d at 756; *LaRette,* 44 F.3d at 686–87. Additionally, the Missouri Supreme Court's review, which found the evidence to support the jury's finding of torture, "cured any error in the ... instruction." *LaRette,* 44 F.3d at 687.

### B. Mitigating Factor Requirements

■ Jones also argues that instruction number 22 erroneously required the jury's findings on mitigating circumstances to be unanimous. Notwithstanding Jones's procedural default with respect to this claim, which is not overcome by the effect of Missouri's mandatory review scheme as discussed in section III.B.2, *supra,* we find this argument foreclosed by our recent decisions in *Griffin v. Delo,* 33 F.3d 895, 905–06 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1981, 131 L.Ed.2d 869 (1995), and *Battle,* 19 F.3d at 1560–62. Taken as a whole, the instructions did not require unanimity.

### VI. Proportionality Review

■ Finally, Jones contends that the proportionality of his sentence was improperly reviewed by the Missouri Supreme Court. This argument lacks merit. The Supreme Court reviewed the sentence pursuant to Missouri law and concluded that it was not disproportionate to the penalty imposed in similar cases. *Jones,* 705 S.W.2d at 24. Such a review based on state law grounds is

constitutionally sound. *LaRette*, 44 F.3d at 688; *Foster*, 39 F.3d at 882.

### VII. Conclusion

The remaining issues Jones raised in the district court are either meritless or have been abandoned on appeal.

The district court's order denying the petition for a writ of habeas corpus is affirmed.

McMILLIAN, Circuit Judge, dissenting.

I respectfully dissent.

The district court determined that many of petitioner's claims were barred by procedural default and that procedural default was not excused either by cause and actual prejudice or by actual innocence. The district court applied the actual innocence standard set forth in *Sawyer v. Whitley*, —— U.S. ——, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992) (petitioner must demonstrate by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found him or her guilty). After the district court's decision, the Supreme Court decided *Schlup v. Delo*, —— U.S. ——, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), holding that the less stringent, actual innocence standard set forth in *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (petitioner must show that a constitutional violation has "probably resulted" in conviction of one who is actually innocent), is applicable when actual innocence is not itself a constitutional claim but is instead a "gateway" through which the habeas petitioner must pass to have otherwise barred constitutional claims considered on the merits. —— U.S. at ——, 115 S.Ct. at 861, *citing Herrera v. Collins*, —— U.S. ——, ——, 113 S.Ct. 853, 862, 122 L.Ed.2d 203 (1993). In the present case actual innocence is a *Schlup v. Delo* "gateway" claim. I would retain jurisdiction of the appeal and remand the case to the district court for further consideration in light of *Schlup v. Delo*.

I am not persuaded that a remand is unnecessary even though, as noted by the majority opinion, the district court addressed petitioner's barred claims on the merits. I do not think that a finding that petitioner was not denied effective assistance of counsel because trial counsel did not overlook the possibility of a diminished capacity or insanity defense is equivalent to a determination that, in light of the new psychiatric evidence that petitioner lacked the requisite mental capacity to deliberate, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. The latter is the essential *Schlup v. Delo* inquiry. —— U.S. at —— – ——, 115 S.Ct. at 868–69 (district court must make "probabilistic determination about what reasonable, properly instructed jurors would do"; differentiating review of actual innocence claim under *Murray v. Carrier* from review of claim of insufficient evidence under *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The district court has not yet made that determination.

Accordingly, I would retain jurisdiction over the appeal and remand the case to the district court for further consideration in light of *Schlup v. Delo*.